**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HARMAN S.,[1] | Case No.: 1:25-cv-00801-KES-SKO (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| TONYA ANDREWS, Administrator of Golden State Annex Detention Facility, POLLY KAISER, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office, TODD LYONS, Acting Director of United States Immigration and Customs Enforcement, KRISTI NOEM, Secretary of the United States Department of Homeland Security, and PAMELA BONDI, Attorney General of the United States, | |
| Respondents. | |

Petitioner Harman S. is a 19-year old asylum seeker who has been in immigration removal proceedings since January 2024. He remained out of custody for over seventeen months after the Department of Homeland Security ("DHS") determined that he did not pose a danger to the

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

community and was not a flight risk. (Doc. 11-1, Ex. 1 at 6–7; 8 C.F.R. § 1236.1(c)(8).) During that time, Petitioner established ties in his community, was employed as a warehouse worker pursuant to a valid work authorization, volunteered at his temple, and appears to have checked in with immigration authorities as requested.

On May 27, 2025, Petitioner appeared at the San Francisco Immigration Court for a scheduled hearing in his immigration case. At the hearing, the government orally moved to dismiss Petitioner's pending removal case, indicating it did so with the intent of placing Petitioner in expedited removal proceedings. The Immigration Judge did not grant the government's oral motion to dismiss Petitioner's case and, instead, set a schedule for the government to file a written motion to dismiss and for Petitioner to respond. However, when Petitioner walked out of the Immigration Court on May 27, 2005, Immigration and Customs Enforcement ("ICE") agents arrested him. The record indicates that the agents did not present Petitioner with a warrant or inform him of the reason for his arrest, nor did the government bring Petitioner before the San Francisco Immigration Judge for a bond hearing on the detention. Instead, agents transported Petitioner later that day to a detention facility in Kern County, in the Eastern District of California, where he was held until the Court ordered his release.

On July 1, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, (Doc. 1), and a Motion for Temporary Restraining Order, (Doc. 5), seeking release from detention. On July 11, 2025, the Court converted the Motion for Temporary Restraining Order into a Motion for Preliminary Injunction, granted the motion, and ordered the Government to release Petitioner and not re-detain him unless it proves by clear and convincing evidence at a bond hearing before the San Francisco Immigration Court that he is a flight risk or danger to the community. The Court then issued a briefing order on the merits of the petition. (Doc. 22.)

On December 3, 2025, Respondents filed a response to the petition. (Doc. 24.) On January 7, 2026, Petitioner filed a reply. (Doc. 25.) On January 12, 2026, the Court referred the matter to the undersigned for preparation of findings and recommendations. (Doc. 26.)

Upon review of the pleadings, and for the reasons explained below, the Court will recommend the petition be granted.

## I.    BACKGROUND

Petitioner is a nineteen-year-old citizen of India and identifies as a devout Sikh. (Pet. ¶¶ 55, 77; Doc. 5-2 at ¶¶ 2, 6.) He sought asylum based on his belief that, due to his political activism in India on behalf of the Sikh community, he was in danger should he return to his country of origin. (Pet. ¶¶ 55, 77; see Doc. 5-2 at ¶ 3.)

Petitioner arrived in the United States in January 2024. (Pet. ¶ 56; Doc. 5-2 at ¶ 3.) After entry, he was briefly detained by DHS agents and then released after agents determined he had no criminal history, was not a danger to the community, and did not pose a flight risk.[2] (Pet. ¶ 56; Doc. 5-2 at ¶ 4; Doc. 11-1, Ex. 1 at 6–7; 8 C.F.R. § 1236.1(c)(8).) DHS did not require him to post a bond or wear an ankle monitor. (Pet. ¶ 56.) DHS provided Petitioner with a notice to appear for removal proceedings. (Id.)

In May 2024, Petitioner applied for asylum and withholding of removal under the Convention Against Torture. (Id. ¶ 59; see Doc. 5-2 at ¶¶ 5, 6.) He also initiated the process for obtaining special immigrant juvenile status ("SIJS"), which if obtained, would exempt him from removability under 8 U.S.C. § 1182(a)(6)(A)(i), and allow him to apply for lawful permanent residency. (Pet. ¶ 60.) Petitioner indicates that, since January 2024, he has attended every immigration check-in and hearing. (Doc. 5-2 at ¶ 4; Pet. ¶¶ 57–58.) Petitioner has also maintained a clean criminal record. (Doc. 5-2 at ¶ 2; see Doc. 11-1, Ex. 1 at 6; Doc. 11-1, Ex. 4 at 21–22.) Pursuant to a valid work authorization, Petitioner has worked full-time at a warehouse. (Doc. 5-2 at ¶ 5; Pet. ¶¶ 62, 76.) Petitioner states that,

---

[2] As Petitioner contends that by releasing him, DHS necessarily determined under 8 C.F.R. § 1236.1(c)(8) that he was not a flight risk. (Doc. 5-2 at ¶ 4; Doc. 5-1 at 7; Pet. ¶¶ 1, 56.) The government responds that DHS never affirmatively made such a finding, (see Doc. 11 at 21), but that argument is inconsistent with the terms of § 1236.1(c)(8) and Petitioner's release. "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018). DHS, at least implicitly, made a finding that Petitioner was not a flight risk when it released him. Valdez v. Joyce, 25 Civ. 4627 (GBD), 2025 WL 1707737, at *3 & n.6 (S.D.N.Y. June 18, 2025) ("[T]he present allegation by ICE that Petitioner is at risk of flight is directly at odds with the contrary Department of Homeland Security ("DHS") decision to release Petitioner on his own recognizance . . . . Respondents' [argument that] Petitioner was [only] released because DHS had no place to incarcerate him . . . has no basis in law."). Additionally, as discussed below, the government does not cite any new facts indicating that Petitioner, who was *arrested immediately after appearing in immigration court* for a hearing on his case, should now be considered a flight risk. (See Pet. ¶¶ 57–59, 61, 75.)

since his arrival, he has also participated actively in the Sikh temple in his community. (Doc. 5-2 at ¶ 6; Pet. ¶ 77.)

On May 27, 2025, Petitioner appeared for a master calendar hearing before an immigration judge at the San Francisco Immigration Court. (Doc. 5-2 at ¶ 7.) Without prior notice to Petitioner, the government orally moved to dismiss Petitioner's case. (Id. ¶ 7; Pet. ¶ 64.) The government's subsequent filings indicate that, upon the dismissal of the Petitioner's immigration case, the government intended to put him into expedited removal proceedings. (See, e.g., Doc. 11-1, Ex. 3 at 13–14.) Petitioner's attorney objected to the government's oral motion, and the immigration judge did not grant it. (Doc. 5-2 at ¶ 7.) The immigration judge directed the government to file a written motion to which Petitioner would have ten days to respond. (Id.; Pet. ¶ 65.) Petitioner states that the immigration judge further noted that Petitioner had filed an asylum application that reasonably stated eligibility for relief. (Pet. ¶ 65.)

Notwithstanding the immigration judge's briefing schedule on the government's motion to dismiss the case, ICE agents approached Petitioner when he exited the courtroom, and, after confirming his identity, arrested him. (Doc. 5-2 at ¶¶ 8–9.) The present record indicates that the ICE agents did not have a warrant and did not tell Petitioner why he was being arrested. (Id.) The agents took him to the San Francisco ICE office, and later that day, to a detention facility located in Kern County, in the Eastern District of California. (Id.; Pet. ¶¶ 67–68.)

On May 28, 2025, the government filed a written motion to dismiss Petitioner's immigration case, along with a motion to transfer venue to the Adelanto Immigration Court. (Pet. ¶ 69; Doc. 1-4, Ex. 4.) The motion stated that the government sought to dismiss the proceedings "because the circumstances of [Petitioner's] case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the Government." (Doc. 1-4, Ex. 4 at 2–3 (quoting 8 C.F.R. § 239.2(a)(7)).) The motion contained no explanation of how the circumstances had changed but stated that the government intended to pursue expedited removal. (See id.)

On May 30, 2025, the San Francisco immigration judge denied the motion to dismiss because he had "reviewed [Petitioner's] application and [found] a 'reasonable possibility that [Petitioner] may be eligible for [asylum].'" (Doc. 1-5, Ex. 5 at 3 (quoting C.J.L.G. v. Barr, 923 F.3d 622, 626 (9th Cir.

4

2019)).) The immigration judge also found that "it would be an inefficient use of judicial resources to dismiss these proceedings in order to place [Petitioner] in expedited removal[,] [where Petitioner could then] make a credible fear claim (that he has already made, and the Court has already reviewed) to then be placed back in these proceedings." (Id.) The government indicates that the San Francisco immigration judge no longer had jurisdiction to issue that ruling, as Petitioner's case had been transferred to the Adelanto Immigration Court. On June 11, 2025, at a hearing before an immigration judge at the Adelanto Immigration Court, the government again orally moved to dismiss Petitioner's case, which was granted. (Pet. ¶ 72; Doc. 1-6, Ex. 6.)

## II.    JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

### A.    8 U.S.C. § 1252(g)

Respondents contend that 8 U.S.C. § 1252(g) is a jurisdictional bar to the Court's review of Petitioner's claims.  Section 1252(g) strips all courts of jurisdiction to hear "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Here, however, Petitioner is not challenging the decision to commence proceedings, adjudicate cases, or execute removal orders. He is instead challenging whether he is subject to mandatory detention during pendency of removal proceedings.

The Supreme Court previously characterized § 1252(g) as a narrow provision, applying "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" Reno v. Am.-Arab Anti-Discrimination

Comm., 525 U.S. 471, 482 (1999). In doing so, the Supreme Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." Id.; see also Jennings v. Rodriguez, 583 U.S. 281, 294 (2018) ("We did not interpret [section 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.") (citing Reno, 525 U.S. at 482)).

Since Petitioner's claims do not challenge any decision to commence proceedings, adjudicate cases, or execute removal orders, the Court finds that § 1252(g) does not present a jurisdictional bar to judicial review. See, e.g., Y.T.D. v. Andrews, No. 1:25-cv-01100 JLT SKO, 2025 WL 2675760, at *5 (E.D. Cal. Sept. 18, 2025) ("Though 8 U.S.C. § 1252(g), precludes this Court from exercising jurisdiction over the executive's decision to 'commence proceedings, adjudicate cases, or execute removal orders against any alien,' this Court has habeas jurisdiction over the issues raised here, namely the lawfulness of his continued detention and the process required in relation to third country removal."); Arenado-Borges v. Bondi, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *3 (W.D. Wash. Dec. 19, 2025) ("Arenado-Borges challenges the revocation of his OSUP and indefinite detention—not his removal order. His petition thus falls outside of Section 1252(g)."). Accordingly, the undersigned recommends finding that 8 U.S.C. § 1252(g) does not bar jurisdiction over Petitioner's claims.

**B.    8 U.S.C. § 1252(b)(9)**

Respondents also contend that § 1252(b)(9) constitutes a jurisdictional bar to the Court's review of Petitioner's claims. Section 1252(b)(9) is "a 'zipper clause' that consolidates all 'questions of law and fact ... arising from any action taken or proceeding brought to remove an alien' into a petition for review" in the court of appeals. Martinez v. Napolitano, 704 F.3d 620, 622 (9th Cir. 2012) (quoting 8 U.S.C. § 1252(b)(9)). "The 'arising from' language appears broad, but the Supreme Court has cautioned against an 'expansive' interpretation of § 1252(b)(9) that would lead to 'absurd' results and make certain claims 'effectively unreviewable.'" Ibarra-Perez v. United States, 154 F.4th 989, 1000 (9th Cir. 2025) (quoting Jennings v. Rodriguez, 583 U.S. 281, 293 (2018)). Although it "might seem draconian at first glance," "importantly, § 1252(b)(9) has built-in limits." J.E.F.M. v. Lynch, 837

6

F.3d 1026, 1031, 1032 (9th Cir. 2016). "[C]laims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." Id. at 1032. Thus, the Ninth Circuit has held that "an immigrant could challenge his ... administrative detention by filing a petition for a writ of habeas corpus in district court, notwithstanding § 1252(b)(9)." Id. (citing Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006)). See Arenado-Borges, 2025 WL 3687518, at *3 ("Arenado-Borges challenges the revocation of his OSUP and indefinite detention—not his removal order. His petition thus falls outside of Section 1252(g). The Government's reliance on Section 1252(a)(5) and (b)(9) fares no better as those sections apply 'only to those claims seeking judicial review of orders of removal.'" (citation omitted) (quoting Singh v. Gonzales, 449 F.3d 969, 978 (9th Cir. 2007))).

Accordingly, the undersigned recommends finding that 8 U.S.C. § 1252(b)(9) does not bar jurisdiction over Petitioner's claims.

## III.   DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Among other claims,[3] Petitioner contends that the Due Process Clause bars the government from re-detaining him without first providing a hearing where it must prove he is a flight risk or danger.  (Doc. 1 at 18-20.) In their response to the petition, Respondents do not contend that the government made an evidence-based determination that Petitioner was a danger, a flight risk, or that he had violated his conditions of release.  (Doc. 24 at 11-17.) Nor do they allege that Petitioner had committed a crime or that they had otherwise made a determination that Petitioner was dangerous.  (Doc. 24 at 11-17.) Instead, Respondents urge the Court to adopt reasoning consistent with the new DHS guidance—that Petitioner's recent re-detention is mandatory under section 1225(b)(2)(A).  (Doc. 24 at 21-23.) Accordingly, before turning to the standard due process analysis, the Court will address the threshold matter of whether Petitioner's re-detention is properly understood to be authorized by section 1225(b)(2)(A) as Respondents contend or under section 1226(a) as Petitioner contends.

---

[3] As Petitioner's procedural due process claim is meritorious, the Court does not address the remaining claims.

Respondents rely on an incorrect interpretation of § 1225(b)(2) —that Petitioner's recent re-detention is mandatory under section 1225(b)(2)(A) because Petitioner is considered an "applicant for admission." (Doc. 24 at 21-25.)  This interpretation has been almost universally rejected by district courts throughout the country, including this Court. Clene C.D. v. Robbins, No. 1:25-CV-01463-KES-SKO (HC) (E.D. Cal. Jan. 12, 2025); Valencia v. Chestnut, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases). As it has done on previous occasions, this Court will follow the majority approach in finding that "Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025).

In sum, consistent with the overwhelming consensus rejecting Respondents' interpretation of section 1225(b)(2)(A), this Court concludes that section 1226(a), not section 1225(b)(2)(A), authorizes and dictates Respondents' authority to re-detain Petitioner.

The Court next turns to Petitioner's due process claim.  Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

/////

/////

**A.  Petitioner Possesses a Protected Liberty Interest.**

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482.  "Though the [Government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481–84.

Immigration officials' January 2024 release of Petitioner pending his immigration proceedings was similar, in that it allowed him to live in the country subject to supervision, but out of custody, for the past one-and-a-half years.  That time inherently allowed Petitioner to form "enduring attachments of normal life," including allowing him to live in the United States, develop ties in his faith community, and become gainfully employed. Id. at 482. The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Because the Court concludes that Petitioner has a protected liberty interest in his release, see Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is

9

*inherent* in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the Court must next determine what process is due before the Government may terminate Petitioner's liberty.

**B. The Mathews Factors Demonstrate Petitioner is Entitled to a Post-Deprivation Hearing**

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the Mathews v. Eldridge factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for a year-and-a-half, and during that time, he has worked and developed ties to the community. His detention denies him that freedom. Morrissey, 408 U.S. at 482 (explaining that private interests include the freedom to "be gainfully employed and . . . to be with family and friends and to form the . . . enduring attachments of normal life").

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla, 704 F. Supp. 3d at 1172. Petitioner has no criminal history and indicates that he has attended every check-in and court

hearing since he arrived in the United States. (Doc. 5-2 at ¶¶ 2, 4, 12.) Nonetheless, ICE agents arrested Petitioner without a warrant as he exited a courtroom following his regularly scheduled immigration hearing. (Id. ¶¶ 7–9.) Prior to the Court's order to release him, Petitioner was not provided with any procedural safeguards to determine whether his detention was justified.  Given the absence of any procedural safeguards to determine if his detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." A.E., 2025 WL 1424382, at *5.

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in re-detaining Petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court, custody hearings are routine and impose a "minimal" cost.  Doe, 2025 WL 691664, at *6.  "If the Government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."  Ortega, 415 F. Supp. 3d at 970. The government's interest is further diminished where a person "has consistently appeared for [his] immigration hearings . . . and [] does not have a criminal record." Pinchi, 2025 WL 1853763, at *2.

On balance, the Mathews factors show that Petitioner's re-detention without first providing him with a bond hearing before a neutral arbiter in which the government must show by clear and convincing evidence that he is a flight risk or danger to the public was in violation of the Due Process Clause of the Fifth Amendment.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be GRANTED.[4]

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-

---

[4] The Court notes that Petitioner has already been released pursuant to the Court's Order Granting Motion for Preliminary Injunction. (Doc. 15.) In addition, Respondents were and are enjoined from re-detaining him without first providing him a pre-deprivation bond hearing.

11

one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:  __February 2, 2026__             _____ /s/ _Sheila K. Oberto_____
                                          UNITED STATES MAGISTRATE JUDGE